UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

| | | |
|---|---|---|
| JOHN ROLLER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 16-288-JMH |
| | ) | |
| v. | ) | |
| | ) | |
| VIBEKE DANKWA and | ) | **MEMORANDUM OPINION** |
| UNITED STATES OF AMERICA, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

John Roller is an inmate at the Federal Medical Center (FMC) in Lexington, Kentucky, where he has been incarcerated since March 2011. Proceeding without a lawyer, Roller has filed a complaint challenging the sufficiency of the medical care he received at the prison. [R. 1]. Roller asserts a civil rights claim against prison physician Dr. Vibeke Dankwa pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), as well as a claim against the United States of America pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-80. The defendants have now filed a motion to dismiss Roller's complaint or, in the alternative, a motion for summary judgment [R. 15], Roller has filed his response [R. 19], and the defendants have filed their reply [R. 21]. This matter is therefore ripe for a decision. For the reasons set forth below, the Court will grant the defendants' motion.

I.

Since 2003, Roller has had health problems with his left eye. In March 2014, Roller underwent a "repeat penetrating keratoplasty with cataract extraction," which is basically a cornea transplant. [R. 1 at 3]. While the procedure was initially successful, Roller eventually rejected the donor tissue he had received. [Id.].

Beginning in November 2015, Roller required and received extensive medical care from the doctors, nurses, and pharmacists at FMC-Lexington, as well as multiple medical professionals at the University of Kentucky Medical Center (UKMC). [R. 15-8]. In the defendants' motion, they provide a detailed summary of the healthcare that Roller received for his eye. [R. 15-1 at 3-11]. While the Court will not recite all of Roller's medical history, his medical records show that, from November 2015 through March 2016, medical professionals examined and/or treated Roller's eye on at least 10 different occasions. [R. 15-1 at 3-9; R. 15-8 at 2-133]. Ultimately, however, Roller's left eye had to be removed. [R. 15-8 at 112-14].

Dr. Dankwa was extensively involved in caring for Roller. Indeed, Dr. Dankwa regularly reviewed Roller's medical records, including the notes made by other physicians and medical professionals; examined Roller on multiple occasions; ordered him new medications; renewed his previous medications; reconciled those medications; requested multiple ophthalmology consultations;

and scheduled Roller for multiple appointments at FMC-Lexington and the UKMC. [R. 15-6 and 15-8]. Even when Roller did not show up to one of his appointments, Dr. Dankwa still ordered him new medications, renewed his previous medications, and scheduled him for another appointment. [R. 15-8 at 29-31].

Nevertheless, Roller claims that he received "woefully inadequate and ineffective" medical care. [R. 1 at 6]. Specifically, Roller alleges that Dr. Dankwa did not follow the treatment plan established by UKMC ophthalmologist Dr. Gregory Katz and was also responsible for a delay in his medical care during a "critical time" between January 25, 2016 and February 11, 2016. [R. 1 at 3-7, 9].

On January 25, 2016, Dr. Dankwa requested that Roller have an ophthalmology consultation for a worsening central corneal ulcer. [R. 15-8 at 62]. Dr. Dankwa described the matter as "urgent" and, that same day, prison officials transported Roller to the UKMC. [Id. at 62-63].

At the hospital, ophthalmologist Dr. Douglas Katz treated Roller. [Id. at 63-66]. Dr. Katz indicated that while Roller had been using prescription eye drops while awake, he "refused to take drops at night." [Id. at 63]. Dr. Katz then described the "central corneal ulcer of [the] left eye" as "stable," but said that the "rejection of [the] cornea transplant" was "worsening." [Id. at 65]. Dr. Katz also noted that Roller had an "extremely poor vision

3

prognosis." [Id.]. Finally, at the end of Dr. Katz's notes, he wrote: "RTC [return to clinic] 1 week." [Id.].

Prison officials brought Roller back to FMC-Lexington, and Dr. Dankwa evaluated Roller and worked with a nurse to reconcile his latest medications. [Id. at 68-71]. Dr. Dankwa also noted that while Roller said he "was told to do eye drops every 2 hours, no paperwork [was] available for review" as she was "await[ing] [the] consult report from UKMC." [Id. at 72]. Date stamps indicate the FMC-Lexington did not receive Dr. Katz's report until two days later. [Id. at 63-66].

Although Dr. Katz said in his notes, "RTC [return to clinic] 1 week," and one week later would have been February 1, 2016, the next substantive event in Roller's medical history did not come until February 8, 2016. On that date, Dr. Dankwa noted that Roller needed to see an ophthalmologist due to his failing corneal transplant. [Id. at 74]. While Dr. Dankwa requested that the consultation occur the next day [Id. at 74], it ended up taking place three days later. [Id. at 77].

On February 11, 2016, Dr. Katz examined Roller. [Id. at 77]. Dr. Katz noted that, in January 2016, Roller had "a serious and large infection of the left transplant" and, therefore, prison officials sent him to the UKMC "for culturing" and to be "started on fortified Vancomycin and Tobramycin." [Id.]. Dr. Katz then said that Roller "had one follow up appointment a couple of days

4

later, but has not kept his follow up appointments since then and has not been seen since January 25, 2016." [Id.]. Dr. Katz added that Roller was "currently taking Vancomycin and Tobramycin every two hours," but noted that "[t]he prognosis for [Roller's] eye is extremely grim." [Id.]. While Dr. Katz switched Roller's medication, he concluded that Roller "may end up requiring enucleation or possibly a repeat transplant to try and eliminate this infection." [Id.].

Later that day, Dr. Dankwa reviewed Dr. Katz's notes, ordered Roller his new medication, and arranged for Roller to be seen by an ophthalmologist once again the very next day. [Id. at 80-81]. While Roller returned to the UKMC on February 12, 2016, and also received treatment over the course of the next few weeks, he eventually had to have his left eye removed in March 2016. [Id. at 81-127].

Shortly thereafter, Roller pursued his administrative remedies and filed an administrative tort claim with the Bureau of Prisons. [R. 15-4 and 15-5]. Roller claimed, among other things, that he "received sub-standard medical treatment by staff here at the Federal Medical Center in the treatment of my left eye resulting in the loss of my left eye." [R. 15-4 at 1]. The Bureau of Prisons, however, denied Roller relief. [R. 15-4 at 9; R. 15-5].

Roller then filed this lawsuit. [R. 1]. While the Court initially screened Roller's complaint and dismissed some of his

5

claims, it allowed his *Bivens* claim against Dr. Dankwa and his FTCA claim against the United States to move forward. [R. 10]. Ultimately, Roller claims that Dr. Dankwa inflicted cruel and unusual punishment on him in violation of the Eighth Amendment to the United States Constitution. [R. 1 at 2]. Roller also alleges that Dr. Dankwa committed medical malpractice and, as a result, the United States is liable pursuant to the FTCA. [R. 1 at 7-10]. Again, the crux of Roller's complaint is that Dr. Dankwa did not follow Dr. Katz's treatment plan and was likewise responsible for a delay in his medical care during a "critical time" between January 25, 2016 and February 11, 2016. [R. 1 at 3-7, 9].

The defendants filed a motion to dismiss Roller's complaint or, in the alternative, a motion for summary judgment [R. 15], Roller has filed his response [R. 19], and the defendants have filed their reply [R. 21]. This matter is therefore ripe for a decision.

II.

As an initial matter, the Court will treat the defendants' motion as one for summary judgment because they have attached and relied upon documents and declarations extrinsic to the pleadings. *See* Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). Ultimately, the Court will grant this motion because Roller's Eighth Amendment and FTCA claims are both unavailing.

A.

Roller's Eighth Amendment claim against Dr. Dankwa is without merit. To be sure, under certain circumstances, a prisoner can establish an Eighth Amendment violation if he is provided inadequate medical care. However, the plaintiff must show that the defendant acted with deliberate indifference to the plaintiff's serious medical needs. *See Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

Here, even construing all of the evidence in the light most favorable to Roller, he cannot establish an Eighth Amendment violation. After all, the evidence shows that Dr. Dankwa was extensively involved in caring for Roller. Indeed, Dr. Dankwa regularly reviewed Roller's medical records, including the notes made by other physicians and medical professionals; examined Roller on multiple occasions; ordered him new medications; renewed his previous medications; reconciled those medications; requested multiple ophthalmology consultations; and scheduled Roller for multiple appointments at FMC-Lexington and the UKMC. [R. 15-6 and 15-8]. Even when Roller did not show up to one of his appointments, Dr. Dankwa still ordered him new medications, renewed his previous medications, and scheduled him for another appointment. [R. 15-8 at 29-31]. In light of this extensive evidence, Dr. Dankwa clearly did not display deliberate indifference to Roller's medical needs.

7

Roller nevertheless claims that Dr. Dankwa did not follow Dr. Katz's treatment plan and "chose to ignore his diagnosis and treat him with less expensive drugs that were virtually ineffective." [R. 1 at 6-7]. Roller, however, offers no evidence to support his assertions, and the defendants' evidence actually shows that Dr. Dankwa worked in conjunction with Dr. Katz to provide Roller with medical care. Plus, in any event, the Sixth Circuit has made it clear that, where a prisoner has received medical attention and the dispute is over the adequacy of the treatment he received, such claims are not cognizable under the Eighth Amendment. *See Graham ex rel. Estate of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Similarly, the court has repeatedly recognized that a mere disagreement over medical treatment does not give rise to a constitutional claim of deliberate indifference. *See, e.g., Wright v. Sapp*, 59 F. App'x 799, 801 (6th Cir. 2003); *Simpson v. Ameji*, 57 F. App'x 238, 239 (6th Cir. 2003).

Still, Roller claims that Dr. Dankwa was responsible for a delay during a "critical time" in his medical care. [R. 1 at 3-7, 9]. But even if that is true, in order to make out a deliberate indifference claim, Roller must demonstrate that Dr. Dankwa acted with a culpable state of mind, such as an intent to deny or delay Roller's access to medical care. *See Lara-Portele v. Stine*, No. 6:07-cv-014, 2008 WL 45398, at *6 (E.D. Ky. 2008) (citing *Estelle*

8

*v. Gamble*, 429 U.S. 97 104 (1976)). Roller has neither offered nor cited any evidence in the record demonstrating that Dr. Dankwa acted with such a culpable state of mind.

It is worth noting that Roller has claimed that, on February 8, 2016, a nurse generated a form on which she generically indicated that inmate health care remains the responsibility of the Bureau of Prisons staff and then stated, "inmate not to be informed of appointment dates." [R. 1 at 4-5]. Roller then says that this document will "be provided showing that medical staff knew [he] was missing his follow up appointments." [R. 1 at 5]. But Roller never actually provides this document or any other relevant evidence in response to the defendants' motion for summary judgment. And, without any context, the nurse's alleged statement does not establish that Dr. Dankwa intentionally denied or delayed Roller's medical care or otherwise acted with a culpable state of mind. If anything, the evidence that is actually in the record shows that, on February 8, 2016, Dr. Dankwa requested that Roller see an ophthalmologist the very next day. [R. 15-8 at 74]. Thus, Roller's claim that Dr. Dankwa acted with deliberate indifference to his medical needs is simply unavailing.

B.

Roller has also not made out a FTCA claim against the United States. While Roller claims that Dr. Dankwa provided him with medical care that fell below the applicable standard of care and

9

caused his injuries, and therefore the United States is liable pursuant to the FTCA, Roller cannot survive the defendants' motion for summary judgment. That is because, under Kentucky law, a plaintiff is generally required to put forth expert testimony to establish the relevant standard of care, any breach of that standard, causation, and the resulting injury. *See Blankenship v. Collier*, 302 S.W.3d 665, 667, 675 (Ky. 2010); *Jackson v. Ghayoumi*, 419 S.W.3d 40, 45 (Ky. Ct. App. 2012). Moreover, the Kentucky courts have clearly said that, "[t]o survive a motion for summary judgment in a medical malpractice case in which a medical expert is required, the plaintiff must produce expert evidence or summary judgment is proper." *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. Ct. App. 2006). Here, Roller has not provided any expert testimony and, thus, he has failed to establish a prima facie case of medical malpractice.

The Court recognizes that there is a "common knowledge" exception to the expert witness rule. This exception provides that, under certain limited circumstances, expert testimony may not be required in a medical malpractice case. *See id.* But that exception only applies in a situation in which "any layman is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care," and it is "illustrated by cases where the surgeon leaves a

foreign object in the body or removes or injures an inappropriate part of the anatomy." *Id.*

Roller's claim does not meet this very narrow exception. While Roller argues that Dr. Dankwa was responsible for a delay during a "critical time" in his medical care, this Court has recognized that "delay-based allegations . . . are fundamentally different from a surgeon leaving a foreign object in a person or operating on the wrong party of the body." *Earle v. United States*, No. 6:13-cv-184, 2016 WL 8814363, *6 (E.D. Ky. 2016). As the Court put it in *Earle*:

> Lay people certainly are not competent, based on common, everyday experience, to judge relative injury causation or delay effect as to a highly complex area of the body such as a retina. Particular cause(s) of [such an injury or complication] . . . surely may result from *many* factors that laypeople do not know how to accurately weigh or evaluate absent expert testimony on the subject.

*Id.* The Kentucky courts have said essentially the same thing. *See, e.g., Jones v. Gaes*, No. 2009-SC-780, 2011 WL 1642225, at *3 (Ky. 2011) ("Absent expert testimony, a layperson is not competent to determine whether the alleged delay by Dr. Jones in recognizing and treating Gaes's perforated colon was the proximate cause of her pain and suffering, the colostomy procedure, or her ongoing medical problems."). In short, the common knowledge exception is inapplicable and, thus, Roller's FTCA claim does not even get off the ground.

11

C.

In light of the foregoing analysis, it is hereby **ORDERED** as follows:

1. The defendants' motion for summary judgment [R. 15] is **GRANTED**.

2. The defendants' motion to dismiss [R. 15] is **DENIED AS MOOT**.

3. Judgment is entered in favor of Dr. Dankwa with respect to Roller's *Bivens* claim.

4. Judgment is entered in favor of the United States with respect to Roller's FTCA claim.

5. This action is **DISMISSED** and **STRICKEN** from the Court's active docket.

6. The Court will enter a judgment contemporaneously with this order.

This 7th day of August, 2017.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge